UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20404-CIV-ALTMAN

**MARIO A. MANBORDE**,

    *Plaintiff*,

*v.*

**DAVID E. SUAREZ**,

    *Defendant*.

_____/

## ORDER

Our Plaintiff, Mario A. Manborde, is a prisoner serving a ten-year sentence in the custody of the Florida Department of Corrections for the crimes of (1) lewd and lascivious molestation of a child under 12 and (2) sexual battery against a child by a person having familial or custodial authority. *See* Judgment, *State v. Manborde*, No. F17-015733 (Fla. 11th Cir. Ct. Nov. 19, 2019), Docket No. 210.[1] Manborde has now filed a civil-rights complaint under 42 U.S.C. § 1983 against Detective David E. Suarez—the lead investigator in his underlying criminal case. *See* Amended Complaint [ECF No. 9-1] at 4 ("David E. Suarez of the Special Victim Unit of the Miami-Dade Police Department was assigned

---

[1] FED. R. EVID. 201 permits a federal court to take judicial notice of state-court records because, generally, those records "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting FED. R. EVID. 201(b)). "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Id.* We'll therefore allow this Order to serve as notice of our intent to take judicial notice of the docket in Manborde's state-court criminal case (Case No. F17-015733), available at https://www2.miami-dadeclerk.com/cjis/CaseSearch.aspx. If Manborde wants to challenge our decision to take judicial notice, he may do so by filing a motion for reconsideration under FED. R. CIV. P. 59(e). Any such motion, though, must be filed within 28 days of this Order. Otherwise, he'll forfeit the right to object to this decision.

to a police case number . . . involving allegations of sexual misconduct reported by the Plaintiff's step-daughter[.]").

In his complaint, Manborde asserts seven claims against Detective Suarez—all involving some investigative misconduct. *See generally id.* Some of these claims "would necessarily imply the invalidity of [Manborde's state-court] conviction and sentence," *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); the rest fail to state a plausible claim to relief. Either way, the Amended Complaint is **DISMISSED**.

## THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). A "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." § 1915A(c). In screening a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted," or (2) "seeks monetary relief from a defendant who is immune from such relief." § 1915A(b).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (cleaned up).

## ANALYSIS

Manborde claims that Detective Suarez violated the Constitution in at least seven different ways. Specifically, Manborde says that Suarez: (1) violated the Fourth Amendment by "intercept[ing]

2

an electronic-oral communication without a warrant in the absence of good cause," Amended Complaint at 4; (2) illegally coerced the victim—a minor child—"to participate in acts of entrapment," *id.* at 5; (3) conducted an investigation with "the sole intention to harm the Plaintiff," *id.* at 8; (4)[2] fraudulently obtained an arrest warrant by "misrepresenting the information in an affidavit," *id.* at 11; (5) violated the "Interstate Agreement on Detainer Act" by purposefully delaying Manborde's extradition "to gain a tactical advantage," *id.* at 13; (6) violated the Constitution "by re-arresting the Plaintiff on a defective warrant," *id.* at 14; and (7) maliciously "altered," "suppressed," and "fabricated" evidence against Manborde to secure a conviction, *id.* at 16–17. Manborde insists that these constitutional violations led to "false imprisonment, loss of employment, injury to reputation, [and] emotional distress." *Id.* at 18. As redress, Manborde seeks "damages in the sum of $300,000.00 and/or any other relief so granted not excluding exoneration and financial restitution." *Id.*

Most of the Amended Complaint implicates the Supreme Court's decision in *Heck*. In that case, the Court held that, "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" 512 U.S. at 486–87. If "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," we must dismiss the claim unless the conviction or sentence has already been invalidated. *Id.* at 487. If, however, the plaintiff's cause of action "would *not* demonstrate the invalidity of any outstanding criminal judgment," then we can allow the claim to proceed—unless

---

[2] Manborde appears to have labeled two *different* causes of action as "Claim 3." *See* Amended Complaint at 7, 10. We'll assume that this is a scrivener's error and refer to the second Claim 3 as "Claim Four." *See id.* at 10.

3

there's "some other bar to the suit." *Id.* (emphasis in original). Because Manborde's state-court conviction is still valid—a reality Manborde doesn't dispute—his § 1983 claims can proceed only if we're satisfied that an order granting them wouldn't undermine the continued viability of that conviction. *See Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007) ("[F]or *Heck* to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory.").

After reviewing Manborde's claims, we've divided them into three "categories." The claims in the first category—Three, Four, Six, and Seven—are plainly barred by *Heck* because they're incompatible with Manborde's state-court conviction. The second category—Claim One—"[does] not necessarily imply the invalidity of a conviction" and thus doesn't implicate the *Heck* bar. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). Unfortunately for Manborde, this cause of action still fails to state a plausible claim—and so, we dismiss it under the screening provisions of § 1915A. The claims in the third category—Two and Five—likewise fail to state a plausible claim, even though they aren't subject to *Heck* preclusion.

### A. Claims Three, Four, Six, and Seven are barred by *Heck*

We begin with the four claims that are barred by *Heck*. In Claim Three, Manborde alleges that Suarez's investigation—which led to his arrest and conviction—was not "proper," and that Suarez embarked on his lazy and slipshod inquest with "the sole intention to harm the Plaintiff." Amended Complaint at 8. In Claim Four, Manborde avers that Suarez "presented an affidavit to a magistrate to obtain an arrest warrant," which falsely claimed that "[Suarez] heard the plaintiff telling the minor he missed having sex." *Id.* at 10. In Claim Six, Manborde maintains that he was later "re-arrested" using a "defective warrant" that was based on "several false arrest reports (affidavits)." *Id.* at 14. Finally, in Claim Seven, Manborde contends that his arrest and conviction were secured with false evidence, and that Suarez maliciously withheld certain exculpatory evidence from him. *See id.* at 16–17 ("The Plaintiff

4

was held in custody, without probable cause, deliberate fabrication and distruction of inadmissible evidence, withholding exculatory evidence establishes and constitutes malice." (errors in original)).

Claims Three and Seven thus allege that Suarez maliciously prosecuted Manborde.³ A malicious-prosecution claim is cognizable under § 1983 because it seeks to vindicate a "clearly established right under the Fourth Amendment to be free from an unreasonable seizure[.]" *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020). To prove that Suarez engaged in a malicious prosecution against him, Manborde must show that "the elements of the common law tort of malicious prosecution [have been met]," and that Suarez's actions resulted in a "violation of [his] Fourth Amendment right to be free of unreasonable seizures." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). The common law elements of a malicious prosecution are: "(i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious . . . ; and (iii) *the prosecution terminated in the acquittal or discharge of the accused*." *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022) (emphasis added).

*Heck* bars Claims Three and Seven because it's undisputed that Manborde's underlying criminal conviction has never been invalidated. *See Heck*, 512 U.S. at 489–90 ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." (cleaned up)); *McDonough*, 139 S. Ct. at 2156–57 ("McDonough could not bring his fabricated-evidence claim

---

³ Claim Seven (it's true) is really more of a fabricated-evidence claim. After all, the gravamen of Claim Seven is that Detective Suarez "altered and suppressed" certain portions of a controlled phone call with the minor victim to establish Manborde's guilt. Amended Complaint at 16–17. But the Supreme Court has held that, in the context of § 1983, courts should reconstrue a "fabricated-evidence claim" as a malicious-prosecution claim. *See McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) ("McDonough analogizes his fabricated-evidence claim to the common-law tort of malicious prosecution . . . . McDonough is correct that malicious prosecution is the most analogous common-law tort here.").

under § 1983 prior to favorable termination of his prosecution. . . . Because a civil claim such as McDonough's, asserting that fabricated evidence was used to pursue a criminal judgment, implicates the same concerns, it makes sense to adopt the same rule [as the one we enunciated in *Heck*].").[4]

Claims Four and Six, by contrast, allege that Suarez falsely arrested Manborde—*i.e.*, that Suarez falsified Manborde's arrest warrant. A false arrest generally occurs when police officers conduct an arrest "knowing that they did not have probable cause[.]" *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). Manborde claims that, although an arrest warrant was issued in his case, that warrant was predicated, not on probable cause, but on statements Detective Suarez knew were false. *See* Amended Complaint at 10 ("[I]n the absence of good faith, on August 7, 2017[,] the defendant presented [a false] affidavit to a magistrate to obtain an arrest warrant."). But a police officer's false statements in an application for a warrant are not, standing alone, sufficient to state a viable false-arrest claim *unless* "such false statements were necessary to the probable cause." *Jones*, 174 F.3d at 1285; *see also Eloy v. Guillot*, 289 F. App'x 339, 347 (11th Cir. 2008) (allowing a false-arrest claim to proceed because the plaintiff alleged that "Guillot knew that there was not even arguable probable cause to arrest Eloy, but intentionally lied in the arrest affidavits and fabricated evidence in order to effect Eloy's arrests and prosecution anyway"). Unlike malicious-prosecution claims, then, false-arrest claims don't *necessarily* implicate *Heck*. *See Henley v. Payne*, 945 F.3d 1320, 1329 (11th Cir. 2019) ("Mr. Henley's success in arguing he was falsely arrested for trespassing in violation of his rights under the Fourth Amendment would not negate any element of the offenses of conviction—harassing phone calls and marijuana possession.").

---

[4] Even if *Heck* didn't apply, Claims Three and Seven would still be dismissed because they fail to satisfy the third element of any malicious-prosecution action—that the "criminal prosecution against [the plaintiff] . . . [was] terminated in his favor[.]" *Williams*, 965 F.3d at 1157.

Even so, on our facts, Manborde cannot assert a viable false-arrest claim without impliedly attacking the validity of his state-court conviction. As we've said, a false-arrest claim requires the plaintiff to show that the officers lacked probable cause for the arrest. *See Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) ("Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment."). Since Manborde was ultimately convicted of the very same offense he was arrested for—*i.e.*, sexual battery of a child—a finding that law enforcement lacked probable cause to arrest him for that crime would imply the invalidity of his subsequent conviction on that count. *See, e.g.*, *Clement v. McCarley*, 708 F. App'x 585, 589 (11th Cir. 2017) ("Mr. Clement's false arrest claim was barred by *Heck*. His claim would clearly imply the invalidity of his convictions because it is based on the assertion that there was no probable cause to believe he had committed the offense for which he was convicted."); *Lloyd v. Leeper*, 451 F. Supp. 3d 1314, 1328 (M.D. Fla. 2020) ("Here, Lloyd's false arrest claim . . . is based upon his contention that there was no probable cause to arrest him because he, Lloyd, did not possess either drugs or counterfeit currency. In other words, to prevail on his false arrest claim, Lloyd would have to prove that he was innocent of the crime of which he was convicted."); *cf. Henley*, 945 F.3d at 1329 (declining to apply *Heck* to a false-arrest claim because the plaintiff's convictions for "harassing phone calls and marijuana possession" were distinct from the trespassing charge the plaintiff claimed he was falsely arrested on). Because we cannot grant these false-arrest claims without first implying the invalidity of Manborde's conviction, *Heck* bars Claims Four and Six.

### B. The *Heck*-Adjacent Claim: Claim One

We turn next to Claim One, which is something of a *Heck*-adjacent claim. Here, Manborde alleges that Suarez violated the Fourth Amendment—and some other state and federal laws—by "intercepting" a "telephone conversation between the minor [victim] and the Plaintiff" without a warrant. Amended Complaint at 4. Fairly read, then, Claim One asserts that Detective Suarez engaged

7

in an illegal search. To prevail on this claim, Manborde must show that the way in which his phone call with the minor victim was intercepted was "unreasonable" under the Fourth Amendment. *See United States v. McBean*, 861 F.2d 1570, 1573 (11th Cir. 1988) ("The Fourth Amendment to the Constitution prohibits, on its face, unreasonable searches and seizures[.]"). Despite the simplicity of its elements, an illegal-search claim can be tricky to adjudicate when (as here) the plaintiff's criminal conviction remains on the books. On the one hand, *Heck* doesn't, in most cases, bar an illegal-search claim because "Fourth Amendment search and seizure violations [do] not necessarily imply the invalidity of a conviction." *Hughes*, 350 F.3d at 1160. On the other, *Heck* dismissal may be appropriate when a successful illegal-search claim "might negate an element of the offense" or otherwise preclude a successful prosecution. *Id.* at 1160 n.2; *see also Baxter v. Crawford*, 233 F. App'x 912, 916 (11th Cir. 2007) (dismissing an illegal-search claim under *Heck* because, "[b]ut for the execution of the [allegedly defective] search warrant[,] . . . Baxter's conviction on Count 5 could not stand").

On our limited facts, we don't think *Heck* precludes Claim One. Detective Suarez, after all, could've had additional evidence, beyond the challenged phone conversation, to support the prosecution and conviction. *See Heck*, 512 U.S. at 487 ("[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." (emphasis in original)). And, if that's true—as it often is—then invalidating the search might have only a minor effect on the ultimate verdict. Since we've seen nothing in the record to suggest that this wasn't true here—and giving Manborde every benefit of the doubt—we conclude that *Heck* doesn't bar Claim One. Still, we dismiss this claim under the screening provisions of § 1915A because Manborde has failed to state a claim upon which relief can be granted.

That's because Manborde's own allegations establish that Detective Suarez didn't conduct an illegal search by listening in on a phone call between Manborde and the minor victim—*even if* he didn't

8

have a warrant. Why? Because Manborde admits that Detective Suarez "allowed the mother and the minor [victim] to sign a consent form to intercept communication." Amended Complaint at 4. The Fourth Amendment doesn't require police to get a warrant to intercept a phone call when *one* of the parties to the call consents to the recording. *See United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1461 (11th Cir. 1991) ("As long as one of the parties to a conversation knows of and consents to the recording, the [Fourth Amendment] is not violated when the government records the exchange and uses the evidence so gathered in a subsequent criminal prosecution." (citing *United States v. White*, 401 U.S. 745, 752 (1971))), *overruled on other grounds by United States v. Young*, 975 F.2d 1537, 1540 (11th Cir. 1992).

Florida law likewise explicitly allows the warrantless interception of oral communications when "one of the parties to the communication[s] has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act." FLA. STAT. § 934.03(2)(c); *Atkins v. State*, 930 So. 2d 678, 680 (Fla. 4th DCA 2006) ("The statute permits a law enforcement officer to direct the recording of a conversation with a consenting participant where the purpose of such interception is to obtain evidence of a criminal act." (cleaned up)); *see also Bryant v. Mostert*, 636 F. Supp. 2d 1303, 1314–15 (M.D. Fla. 2009) (finding that "recording a telephone conversation between Plaintiff and a minor without Plaintiff's consent" was lawful under *both* the Fourth Amendment *and* FLA. STAT. § 934.03(2)(c) because "the other individual, who was part of the telephone conversation, consented to the call being recorded"). Manborde concedes that the minor victim—the other person on the call—"sign[ed] a consent form to intercept communication," and he admits that the contents of this call were used against him in his criminal prosecution. Amended Complaint at 4. Claim One thus fails to allege a viable Fourth Amendment (or Florida law) violation.

### C. Claims Two and Five

We turn, last, to Claims Two and Five. In Claim Two, Manborde contends that Detective Suarez improperly used the minor victim to "entrap" him by telling the victim "what to say" during the recorded conversation. Amended Complaint at 5–6. Claim Five alleges that Detective Suarez "violated [the] Interstate Agreement on Detainer Act" by arresting Manborde in Kansas City. *Id.* at 12. To prevail under § 1983, Manborde must show that he "was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cnty, Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997). Neither claim sufficiently alleges that Manborde was deprived of a right protected by § 1983.

Starting with Claim Two, we're not totally sure what Manborde is saying here. On the one hand, he *might* be complaining that Detective Suarez improperly used the minor victim to entrap him. *See* Amended Complaint at 6–7 ("It is beneath the dignity of a government actor to allow a minor or a female to appear to be questionable virtue [sic] in order to lure men to commit a crime. This constitutes entrapment."). If this is what he's alleging, the claim fails because "entrapment by itself is not sufficient to support § 1983 liability. Entrapment is an affirmative defense available to criminal defendants, but it 'is not of a constitutional dimension.'" *Topa v. Kerbs*, 2018 WL 4698462, at *2 (M.D. Fla. Oct. 1, 2018) (quoting *United States v. Russell*, 411 U.S. 423, 433 (1973)); *see also Stokes v. Gann*, 498 F.3d 483, 485 (5th Cir. 2007) ("We agree that *Russell*'s edict that entrapment is not a constitutional violation extends to civil cases[.]").[5]

---

[5] It's true (of course) that entrapment *can* violate a person's substantive due-process rights when "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Russell*, 411 U.S. at 431–32. But recruiting the victim of a sex crime to participate in a controlled call with the perpetrator is a common investigative technique that we'd be hard-pressed to characterize as "outrageous." *See, e.g.*, *Bryant*, 636 F. Supp. 2d at 1315 (finding no constitutional violation where a minor participated in a controlled call with the defendant).

10

On the other hand, we could read Claim Two as suggesting that Detective Suarez *coerced* the victim into joining the controlled call—and that he then coached her on what to say. *See* Amended Complaint at 6 ("In a deposition sworn under oath[,] the minor stated that she was being told what to say by [Detective Suarez] during the intercepted phone conversation. The minor further stated under oath that she had no other choice."). Two problems with this one. *One*, Manborde cites no authority for the proposition that the police cannot coach a participant in a controlled call, *see generally* Amended Complaint—which is reason enough to ignore this argument, *see United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."). Nor would any such rule make sense. The police always coach the controlled-call participant on what to say—otherwise (it probably goes without saying) the investigation runs the very serious risk of going sideways. *Two*, Manborde's claim that Suarez coerced the minor victim is belied by his separate concession that the minor victim and her mother *consented* to the recorded call. *See* Amended Complaint at 4 ("The defendant afterwards allowed the mother and the minor [victim] to sign a consent form to intercept communication."); *see also Bass v. Myers*, 2021 WL 46709, at *1 (M.D. Ala. Jan. 5, 2021) ("[B]oth the minor and the minor's mother consented to the phone call. A person's status as a minor does not, in and of itself, foreclose the person's capacity and ability to consent to recording a telephone conversation.").

But here's the thing: Even if Detective Suarez *had* coerced the victim into participating in the controlled call, Manborde would lack standing to challenge that coercion here. *See Collins v. United States*, 2013 WL 6257701, at *19 (S.D. Fla. July 22, 2013) (White, Mag. J.) (rejecting a claim that law enforcement coerced a witness into giving perjured grand jury testimony because the "movant has no standing to [bring] a claim that Camacho was threatened and/or coerced to make the alleged

11

inculpatory statements"), *report and recommendation adopted*, 2013 WL 6259114 (S.D. Fla. Dec. 4, 2013) (Cooke, J.). However we parse it, then, Claim Two fails to state a claim under § 1983.

Claim Five fares no better. As best as we can tell, Manborde appears to be arguing that the delay between his arrest in Kansas City and his extradition to Florida violated the Interstate Agreement on Detainer Act (the "IADA"). *See* Amended Complaint at 13 ("The Plaintiff was to be released from custody after 30 days based on the [IADA]."). Although it's true that violations of the IADA can be remedied by a § 1983 suit, *see Bush v. Muncy*, 659 F.2d 402, 407 (4th Cir. 1981) ("[B]ecause the [IADA] is a compact among the states sanctioned by Congress under [the Constitution], it is a federal law whose violation may be remedied under section 1983."), Manborde's arrest doesn't implicate the IADA. Manborde was arrested in Kansas City on a Florida arrest warrant, and he remained in Kansas City until he was extradited to Florida. *See* Amended Complaint at 13 ("The Plaintiff was held at the local county jail [until] October 6, 2017[,] he was placed in the custody of the State of Florida and taken back to Florida and interviewed."). In other words, he wasn't serving a separate sentence pursuant to a non-Florida criminal judgment. That's significant because the IADA *only* applies to prisoners who are serving *a post-conviction sentence* in a state or federal facility; it doesn't apply to pretrial detainees (like Manborde). *See United States v. Currier*, 836 F.2d 11, 16 (1st Cir. 1987) ("The terms of the [IADA] apply exclusively to prisoners who are actually serving their sentences, and not to pretrial detainees."); *accord Taylor v. Pekerol*, 760 F. App'x 647, 656 (11th Cir. 2019); *see also United States v. Tummolo*, 822 F. Supp. 1561, 1563 n.2 (S.D. Fla. 1993) (Moore, J.) ("The IADA does not apply to pretrial detainees."). Claim Five, in sum, fails to state a claim under § 1983.

\* \* \*

For all these reasons, we hereby **ORDER AND ADJUDGE** as follows:

1. The Amended Complaint [ECF No. 9] is **DISMISSED**.

a. Claims Three, Four, Six, and Seven of the Amended Complaint are **DISMISSED without prejudice** under *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Petersen v. Overstreet*, 819 F. App'x 778, 779 (11th Cir. 2020) ("[C]ases barred by *Heck* . . . are typically dismissed without prejudice[.]").

b. Claims One, Two, and Five of the Amended Complaint are **DISMISSED *with prejudice*** under the screening provisions of 28 U.S.C. § 1915A. *See White v. Lemma*, 947 F.3d 1373, 1376–77 (11th Cir. 2020) ("A dismissal for failure to state a claim under the early screening provision [of 28 U.S.C. § 1915A] is no different from a dismissal under [FED. R. CIV. P. 12(b)(6)]. It is on the merits and with prejudice." (cleaned up)).

2. All deadlines are **TERMINATED**. Any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida this 17th day of June 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Mario A. Manborde, *pro se*